ST. RITA'S HOME, INC., Appellant, v. TOWN OF AMHERST et al., Respondents.

Fourth Department, January 13, 1972.

---

*Kevin Kennedy* for appellant.

*Smith, Murphy & Schoepperle (James W. Greene* of counsel), for Town of Amherst, respondent.

*Pottle, O'Shea, Adamson & Reynolds (C. DeForest Cummings* of counsel), for Gordon & Broderick Associates, respondent.

*Cox, Barrell & Walsh (James R. Walsh* of counsel), for Drott Construction Corp., respondent.

DEL VECCHIO, J. P. Following a trial without a jury the court dismissed the complaint against all defendants. Upon this appeal plaintiff seeks a reversal only as to the defendant Gordon & Broderick Associates. The sole question presented is whether that defendant negligently prepared plans and specifications to connect plaintiff's sewage disposal facilities to the town trunk sewer.

The facts are simple. Plaintiff's institution, located on 15 acres of land on North Forest Road in the Town of Amherst, consisted of a convent, a hospital and children's home, an employees' residence, a chaplain's residence and three cottages with basement plumbing fixtures, serviced by septic tank facilities.

In 1967 plaintiff decided to connect its sewage system to the town trunk sewer. The administrator telephoned defendant Gordon & Broderick, engineers located in the Town of Amherst, and inquired whether they could send someone to make a design for the connection. When a professional engineer from defendant's firm arrived, the administrator told him what the problem was and that she knew nothing about sewage; she asked him to design something that would take care of the premises " and

to see to it that we get it correct ''. Defendant undertook the work and prepared a written proposal which called for connection of the existing sewage system to the sanitary trunk sewer in the highway '' to comply with the requirements of the Plumbing and Drainage Ordinance of the Town of Amherst ''.

Section 3 (a) of the town sewer ordinance provided: '' The main sanitary drain for any building may be installed hung below the first floor or installed under the cellar floor. Floor drains are not permitted. Laundry trays and washers installed in cellars shall have a gate valve in their waste lines. All plumbing fixtures installed in cellars and basements shall be on a branch line from the main sanitary drain and shall have a gate valve in this branch line to prevent flooding in the event the street sanitary sewer becomes clogged. Such gate valves shall be closed at all times except when the fixtures are in use.''

The plans and specifications prepared by defendant called for connection of the existing sewage system to the trunk sanitary sewer in the highway, but no provision was made for the gate valve required by the ordinance. Defendant did not examine the buildings to determine whether any gate valve was in place and no advice was given to plaintiff concerning the installation of such a valve. A contractor completed the work in accordance with the specifications in December, 1967.

On January 28, 1968 the main sewer trunk backed up, causing sewage to flow into the basements of the three cottages and the children's home. Thereafter, plaintiff received a letter from the town, stating that the sanitary sewer connection had been made in violation of the sewer ordinance in that the connection was made without providing the required gate valve on the sewer lines. Plaintiff engaged another firm to prepare recommendations to correct the condition and a gate valve was installed in accordance with these recommendations.

By this action plaintiff contends that defendant was negligent in designing the connection of plaintiff's sewage facilities to the trunk line by failing to provide or require the installation of a backflow check valve or other device to prevent a backup and flooding condition. The court found that '' there is no evidence in this case to show that Gordon & Broderick failed to devote a reasonable degree of skill and fidelity to their work '', and dismissed the complaint.

We disagree and conclude that the trial court's finding that plaintiff failed to establish negligence on the part of the defendant, Gordon & Broderick, is not supported by a fair interpretation of the evidence in this record.

Plaintiff called a licensed professional architect with a Bachelor of Architecture degree who had extensive engineering training, was familiar with the drainage and sewer ordinance and was a member of the firm which prepared the corrective recommendations by which the gate valve was installed. He testified that a septic tank system does not require gate valves, which serve to prevent backflow, and such valves are not installed in these systems because they do not normally back up as a sewer will. The sewer ordinance applies only to a sanitary sewer system, which shall have a gate valve in the branch line to prevent flooding. This testimony, as well as his factual description of the operation and function of valves, was not contradicted by any witness. When called to plaintiff's premises after the January flooding he examined the facilities and found that there was no gate valve as required by the ordinance. He examined defendant's plans and specifications and found that they did not call for a gate valve. He also testified that valves are not required in all sewers but where trouble is suspected they are and that the sewers in Amherst are high with a minimum line of flow, which is why the ordinance provides for gate valves to protect against backflow; that if his firm had been doing the job it would have put in a gate valve as common practice.

Defendant called only one witness, a partner in the firm. He testified that he was familiar with the town ordinance because he worked under it every day; that he had never seen a gate valve in a septic tank system; that the agreement with plaintiff was to provide an out-fall from the existing facilities to the main trunk in the highway; that he had never spoken with plaintiff's administrator about the job; that there was nothing in the ordinance which required a gate valve at the site for which his firm drew the plans; that they did not check to determine whether there were any gate valves to comply with the ordinance, did not consider it incumbent on them to determine whether gate valves were required and did not give any advice to plaintiff on this subject.

Defendant did not call the professional engineer whom it sent to discuss the sewer connection with plaintiff's administrator, who made the agreement and who handled the job for defendant. The record contains no explanation for the failure to call this witness, from which it may be inferred that his testimony would not have contradicted or qualified that given by the witnesses called by plaintiff if he had been called. (*Laffin* v. *Ryan,* 4 A D 2d 21, 24–25.) It may be noted that upon oral argument of the appeal counsel for defendant stated that the engineer had been in court during the trial.

In the course of the motions made at the close of the evidence defendant's counsel described the location in question as " the worst flooding area in Erie County ", stating " St. Rita's knows it, the town knows it, everyone knows it."

Defendant was hired to connect plaintiff's sewage system to the trunk sewer and, in the circumstances which existed, it had the responsibility either to provide for a gate valve in the plans and specifications or to advise the owner of the necessity for such a valve, in order that the ordinance might be complied with. As a design engineer, defendant was under the same obligation as is an architect — to " exercise reasonable care and diligence in performing his duties to his employer, act with reasonable judgment and taste, and without neglect." (N. Y. Jur., Architects, § 19.) Defendant held itself out as an engineering firm competent to design a plan by which plaintiff's premises might be connected to the municipal sewer system. It was bound to know what was necessary to make a proper connection. (*Hubert* v. *Aitken,* 15 Daly 237, affd. 123 N. Y. 655.) Not only implicit in the employment itself, this was made specific by the conversation between plaintiff's administrator and defendant's professional engineer in which she asked him if he could see to it that they got it correct and if he would " design something that would take care of the premises ". This conversation is relevant to the duty to exercise reasonable care which devolved on defendant.

" The risk reasonably to be perceived defines the duty to be obeyed ". (*Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339, 344.) In this case defendant was aware that plaintiff relied on it to provide a proper system when a connection to the trunk sewer was to be made. The testimony of the expert produced by plaintiff amply established the need for a gate valve if plaintiff was to be protected from the backflow reasonably to be anticipated and which in fact occurred. The need for the valve was further demonstrated by the requirement in the town ordinance " to prevent flooding in the event the street sanitary sewer becomes clogged ". This requirement, coupled with the physical facts of high sewers and a minimum line of flow, leads to the inevitable conclusion that a gate valve in the system was a necessity if the danger of backflow — which was a danger created only by the connection of plaintiff's premises to the municipal line — was to be avoided.

Defendant contends that the matter of a gate valve was a matter within the scope of a mechanical engineer's function and not within its duties as a civil engineering firm. This defense

calls to mind the statement in *Hubert* v. *Aitken* (*supra*, p. 239): ",The architect who undertakes to construct a house that is to be heated by steam is groping in the dark unless he knows how large a chimney is required. It is as necessary that the architect should know what is needed to make the steam-heating apparatus serviceable as it is that he should know how sewer gas is to be kept out of the house. No one would contend that at this day [the opinion is dated May, 1889] an architect could shelter himself behind the plumber, and excuse his ignorance of the ordinary appliances for sanitary ventilation by saying that he was not an expert in the trade of plumbing." So, in our case, we do not believe defendant may escape liability by shifting responsibility to another. (See, also, Education Law, § 7201, subd. 4; § 7205.) It was hired to prepare a plan for connection to the municipal sewer in a way which would be " correct " and which would " take care of the premises ". The physical circumstances at the location of the work were such that flooding of the premises might well be anticipated if a sewage system like plaintiff's were connected with the trunk sewer without a gate valve, which anticipation was incorporated in the town ordinance requiring gate valves under these conditions. With knowledge of the ordinance and that gate valves are not present in septic tank systems, defendant undertook to draft plans and specifications for connection of plaintiff's sewage system to the sanitary trunk sewer " to comply with the requirements of the Plumbing and Drainage Ordinance of the Town of Amherst ", but — although exposing plaintiff by the connection to a new and previously nonexisting danger — failed to make provision for, or advise of the need for, a protective device — a gate valve. It seems to us that, upon the foregoing, by no fair interpretation of the evidence may it be said that plaintiff failed to establish negligence.

The trial court concluded that the damages sustained by plaintiff amounted to $5,793.55, representing the value of property necessarily destroyed as a result of the flooding, together with the cost of installing a valve after the flood. This conclusion is supported by the record and is not questioned by defendant on this appeal. (Defendant in fact has submitted no brief and has simply relied on the oral argument.) The judgment should be reversed and judgment entered for plaintiff against defendant Gordon & Broderick Associates in the amount of $5,793.55 with costs.

MARSH, GABRIELLI, CARDAMONE and HENRY, JJ., concur.

Judgment and order unanimously reversed on the law and facts with costs and judgment granted to plaintiff against defendant Gordon & Broderick Associates in the amount of $5,793.55.