■ ANDREW S. WAGNER et al., Respondents, v RICHARD J. KENIFIC et al., Appellants, et al., Defendant. (And a Third-Party Action.)—Kane, J. Appeals (1) from a judgment of the Supreme Court (Conway, J.), entered April 5, 1989 in Albany County, upon a verdict rendered in favor of plaintiffs, and (2) from that part of an order of said court, entered April 18, 1989 in Albany County, which denied defendant Glen Schips' motion for summary judgment dismissing plaintiffs' third cause of action.

Plaintiff Andrew S. Wagner (hereinafter plaintiff) suffered severe injury after flushing a urinal at his place of employment, a meat scraps plant in the City of Albany, owned by the Corenco Corporation. The urinal erupted with scalding, 180-degree water which caused severe burns to 20% of plaintiff's body. Plaintiff and his wife thereafter brought this action against defendants, Richard J. Kenific, M & B Plumbing and Heating Company, Inc. (hereinafter M & B) and Glen Schips, three plumbing concerns that had performed work on Corenco's plumbing system. Defendants asserted cross claims against each other, with claims also brought against Corenco as a third-party defendant.

The trial evidence demonstrated that the scalding water emanated from a water boiler installed by Kenific in 1982. Thereafter, hot water was found in cold water lines due to the pressure being higher in the hot water line and several cross connections between the hot and cold water systems. Corenco's plant manager, Peter Paulding, subsequently contacted M & B to remedy the predicament and, in February 1986, M & B informed Paulding that the problem could be corrected by the installation of a check valve on a particular water line close to the boiler. M & B did not install the check valve, however,

and Paulding subsequently hired Schips in April 1986 to do the work. Paulding informed Schips that M & B had prescribed the check valve to correct the hot water problem and that it was not necessary to inspect the entire plumbing system. Schips then installed the check valve without inspecting the system. Expert testimony at trial revealed that the check valve installed by Schips corrected only one cross connection and that the existence of other cross connections contributed to the flow of hot water into the cold water system and eventually the incident during which plaintiff was scalded.

The jury returned a verdict in favor of plaintiff and his wife, finding liability apportioned 50% to Corenco, 25% to Kenific, 15% to Schips and 10% to M & B. Corenco and M & B had previously settled with plaintiff and the remaining defendants, Kenific and Schips, moved to set aside the verdict as excessive. Supreme Court denied the motions and entered judgment upon the verdict. Supreme Court also entered an order granting a pretrial motion by Schips for summary judgment insofar as it sought dismissal of plaintiffs' cause of action for strict products liability. These appeals followed.

The judgment and order should be affirmed. In arguing that portions of his preverdict motions were erroneously denied, Schips contends that his only duty was to properly install the check valve, and that no questions of fact existed nor was evidence produced at trial that demonstrated that the check valve was negligently installed. Plaintiffs' theory of negligence, however, centered around Schips' installation of the check valve *without* properly inspecting the plumbing system and *with* prior knowledge of the hot water problem. In this regard, Schips owed a duty as a plumber to exercise reasonable care and diligence in his work. "The risk reasonably to be perceived defines the duty to be obeyed" *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344) and, having been informed of the problem that the check valve was intended to solve, Schips was obligated to see that it did so *(see, St. Rita's Home v Town of Amherst,* 38 AD2d 109, 113-114). Expert proof was offered demonstrating that Schips contravened acceptable standards of plumbing in failing to test the system after installing the check valve and that Schips should have done so to see that the check valve actually corrected the problem it was meant to cure. At the very least, there were factual questions as to whether Schips negligently relied on instructions from Paulding that testing was unnecessary. In our view, sufficient issues

of fact existed that were properly left for the jury's determination.

We equally reject Schips' argument that Supreme Court erred in instructing the jury that they may consider "as some evidence of negligence" a finding by them that Schips violated State Building Code requirements "to test the system to disclose any defects there may be". Plaintiffs attempted to demonstrate that Schips violated 9 NYCRR 907.1 and 907.2 which require, generally, that plumbing work be tested to "disclose leaks or defects" (9 NYCRR 907.1 [a]). Schips contends that any such violation could not constitute evidence of negligence because those regulations only required tests for leaks and were therefore inapplicable to the testing allegedly lacking in his work. Although the prescribed tests make reference to proving a system watertight *(see,* 9 NYCRR 907.2 [a]), the purpose of the tests was to ensure that the system adequately performs for the use intended *(see,* Executive Law § 377 [2] [b]). Part 907 specifically includes testing for defects, as well as leaks *(see,* 9 NYCRR 907.1 [a]), so that we may reasonably interpret that part as requiring testing for defects such as a cross connection that would allow hot water into the cold water system. Furthermore, Schips' failure to so test clearly bears a practical causal relationship to plaintiff's injuries *(see, Morales v City of New York,* 70 NY2d 981, 984). Accordingly, we find no error in Supreme Court's charge to the jury or, likewise, the court's refusal to grant Schips' preverdict motions to dismiss.

Finally, we reject the argument put forth by Schips and Kenific that the jury award "deviate[d] materially from what would be reasonable compensation" (CPLR 5501 [c]). The jury awarded plaintiff $375,000 for past pain and suffering and $10,000 for his pain and suffering in the future. Plaintiff's wife was awarded $25,000 on her derivative claim. Plaintiff sustained first and second degree burns to his face, neck, chest, right arm, right hand, abdomen, right groin area and genitals. His doctor testified that plaintiff's burns caused him extreme pain and resulted in depigmentation of his arm and brownish pigmentation to parts of his abdomen, as well as his skin becoming more sensitive to sunshine and sunburn. Plaintiff's wife was denied conjugal relations including sex, companionship, and comfort and support during the death of her mother. In our view, the verdict was well within the evidence presented to the jury on damages.

Judgment and order affirmed, without costs. Mahoney, P. J., Kane, Casey, Mercure and Harvey, JJ., concur.