OPINION OF THE COURT
Marcy S. Friedman, J.
In this product liability action, plaintiff Susan Weigl alleged that she sustained injuries as a result of a defective lab coat manufactured by defendant Quincy Specialties Company.[1] The action was tried before a jury, which rendered a verdict, dated December 8, 2000, finding defendant liable on negligence, breach of warranty and strict liability theories. The verdict awarded plaintiff $9,410,000 for past pain and suffering, $190,000 for past medical expenses, $400,000 for past loss of earnings, and $10,000,000 for future pain and suffering. Defendant moves to set aside the verdict, pursuant to CPLR 4404, on the grounds that it is grossly excessive, should be set aside in the interests of justice, and is contrary to the weight of the evidence.
CPLR 5501 (c) sets forth the standard for determining whether a jury verdict should be set aside as excessive. This statute provides as follows:
“In reviewing a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall determine *3 that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.”
Although phrased as a directive to the appellate courts, it now appears to be settled that the standard applies as well to the trial courts. (See, Gasperini v Center for Humanities, 518 US 415 [1996] [reviewing New York law]; Inya v Ide Hyundai, 209 AD2d 1015 [4th Dept 1994]; Cochetti v Gralow, 192 AD2d 974 [3d Dept 1993]; Shurgan v Tedesco, 179 AD2d 805 [2d Dept 1992].)
The “deviates materially” standard of CPLR 5501 (c) replaced the prior, more restricted standard under which a verdict could be set aside “only where the amount is such as to shock the conscience of the court.” (See, Neal v Rainbow House Fruits, 87 AD2d 511 [1st Dept 1982]; Petosa v City of New York, 63 AD2d 1016 [2d Dept 1978].)
CPLR 5501 (c) was enacted in 1986 as part of a series of measures aimed at containing high malpractice premiums. (L 1986, ch 266, § 1 [“Legislative findings and declaration”].) The “deviates materially” standard was intended to “invite more careful appellate scrutiny” of damage awards. (Id.) As noted by the Gasperini Court, this standard, “in design and operation, influences outcomes by tightening the range of tolerable awards.” (Supra, 518 US, at 425.)
While the courts are charged with review of jury awards, it has been acknowledged that “a judge’s training in law gives the judge no greater ability than a jury to determine the dollar amount that appropriately compensates any particular level of suffering.” (Consorti v Armstrong World Indus., 72 F3d 1003, 1009 [2d Cir 1995], vacated on other grounds 518 US 1031 [1996].) In light of this recognition, the courts have grappled with the question of why a court’s assessment of what constitutes reasonable compensation should take precedence over a jury’s. One influential opinion has concluded:
“Nonetheless, there are important reasons why courts cannot properly leave it to juries to set the limits of compensation for such injuries. Even where the law is incapable of furnishing a rational answer, it seeks at least to be evenhanded, fair, and predictable. It should be our goal that persons who endure a similar degree of suffering can expect to receive a roughly similar award of compensation * * * and that similarly situated defendants be burdened by similar judgments. If each jury is *4 given unbridled authority to set the level of damages, awards will vary widely and unpredictably.” (Consorti v Armstrong World Indus., 72 F3d, at 1009.)
Given this concern for predictability, it is not surprising that New York courts applying the “deviates materially” standard have “look[ed] to awards approved in similar cases.” (Gasperini v Center for Humanities, supra, at 425.) As explained by the Appellate Division, Second Department:
“Where the exercise of discretion is at issue, certain standards of uniformity should be adhered to [citation omitted]. This is not to say that the amount of damages awarded or sustained in cases involving similar injuries are in any way binding upon the courts in the exercise of their discretion [citation omitted]. However, prior verdicts may guide and enlighten the court and, in a sense, may constrain it [citation omitted]. ‘A long course of practice, numerous verdicts rendered year after year, orders made by trial justices approving or disapproving them, decisions on the subject by appellate courts, furnish to the judicial mind some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation awarded’ (Fried v New York, New Haven & Hartford R. R. Co., 183 App Div 115, 125, affd 230 NY 619 [other citation omitted]).” (Senko v Fonda, 53 AD2d 638, 639 [2d Dept 1976];[2] see also, Sassoonian v City of New York, 261 AD2d 319 [1st Dept 1999]; Leon v J & M Peppe Realty Corp., 190 AD2d 400 [1st Dept 1993]; Karney v Arnot-Ogden Mem. Hosp., 251 AD2d 780 [3d Dept 1998] [as amended by unpublished order entered Sept. 10, 1998], lv dismissed 92 NY2d 942; Johnston v Joyce, 192 AD2d 1124 [4th Dept 1993].)
The courts have, however, recognized that while review of verdicts in other cases is useful in determining what constitutes reasonable compensation, each case must be evaluated on its own facts. As explained by the Appellate Division of this Department: “Modification of damages, which is a speculative endeavor, cannot be based upon case precedent alone, because *5 comparison of injuries in different cases is virtually impossible.” (Po Yee So v Wing Tat Realty, 259 AD2d 373, 374 [1st Dept 1999]; see also, Ordway v Columbia County Agric. Socy., 273 AD2d 635 [3d Dept 2000]; Senko v Fonda, supra.)
Notwithstanding the enhanced review directed by CPLR 5501 (c), the courts have also continued to emphasize that the assessment of damages for personal injuries is the “peculiar function” of the jury (Po Yee So v Wing Tat Realty, supra, at 374), or “primarily a question of fact for the jury.” (Seidner v Unger, 245 AD2d 362, 363 [2d Dept 1997]; Coutrier v Haraden Motorcar Corp., 237 AD2d 774, 777 [3d Dept 1997].) Moreover, the courts have cautioned that “considerable deference should be afforded” to the jury’s damage award (Coutrier v Haraden Motorcar Corp., supra) and that, “[although possessing the power to set aside an excessive jury verdict, a trial court should nonetheless be wary of substituting its judgment” for that of the jury. (Po Yee So v Wing Tat Realty, supra, at 374.)
Applying these standards to the instant case, the court has reviewed the awards in the burn cases cited by the parties, as well as those located through the court’s own research. It appears that the two highest verdicts for pain and suffering in New York burn cases, both of which were cited by plaintiff, were in the amounts of approximately $10,000,000 and $8,000,000, respectively. (See, Moskowitz v Massachusetts Inst. of Technology, 100 AD2d 810 [1st Dept 1984], lv denied 63 NY2d 606 [verdict of $10,300,000 reduced as excessive to $5,000,000, to be further reduced by 32% for plaintiffs contributory negligence; plaintiff underwent 100 skin graft and other operations, would require 500 more operations over her lifetime, and was partially blind]; Whitfield v City of New York, 239 AD2d 492 [2d Dept 1997], lv dismissed 90 NY2d 777, lv denied 91 NY2d 812, 11 NY Jury Verdict Rep issue 12, case 1 [verdict of $5,000,000 for past pain and suffering and $3,000,000 for future pain and suffering*[3] reduced as excessive by trial court to $4,000,000 and $2,000,000, respectively, and further reduced by the Appellate Division to $3,000,000 and $1,000,000, respectively; plaintiff had third degree burns, causing severe facial disfigurement, and posttraumatic stress disorder, causing plaintiff to become suicidal*].)
*6 In contrast, awards in the lower range of $1,000,000 and below were cited by defendant. (See, Duzon v State of New York, 244 AD2d 189 [1st Dept 1997] [decision after bench trial awarding plaintiff $275,000 for past pain and suffering and $100,000 for future pain and suffering increased as inadequate to $550,000 and $200,000, respectively; plaintiff had second and third degree burns to 15% of his body, including legs and buttocks, was hospitalized for six weeks, and experienced excruciating pain during two skin graft procedures]; Fleming v New York City Hous. Auth., 262 AD2d 525 [2d Dept 1999], lv dismissed and denied 94 NY2d 781 [verdict of $250,000 affirmed; infant plaintiff had severe burns to face and chest with permanent scarring]; Brown v New York City Hous. Auth., 250 AD2d 719 [2d Dept 1998], appeal dismissed 92 NY2d 1045 [1999], lv denied 93 NY2d 805 [1999] [verdict of $50,000 for past pain and suffering was not challenged, while verdict of $500,000 for future pain and suffering was reduced as excessive to $300,000; plaintiff sustained second and third degree burns to right leg, which required skin graft and resulted in keloid scar]; Lyall v City of New York, 228 AD2d 566 [2d Dept 1996], lv denied 88 NY2d 816, 11 NY Jury Verdict Rep issue 30, case 10 [verdict of $400,000 for past pain and suffering and $600,000 for future pain and suffering reduced as excessive to $300,000 and $100,000, respectively; plaintiff firefighter sustained second and third degree burns to thigh, requiring skin grafts*]; Wagner v Kenific, 161 AD2d 1092 [3d Dept 1990] [verdict of $375,000 for past pain and suffering and $10,000 for future pain and suffering upheld; plaintiff had severe bums to 20% of his body including face, neck, chest, arm, hand, abdomen, groin and genitals, with resulting depigmentation and increased sensitivity to sunlight].)
In several other cases involving severe burns, the jury awarded damages for past and future pain and suffering in the range of two to five million dollars. Some of the verdicts were reduced to the one to two million dollar range. (E.g., Parris v Shared Equities Co., 281 AD2d 174, 175 [1st Dept 2001] [verdict of $2,250,000 for past pain and suffering and $1,000,000 for fiiture pain and suffering upheld, although it is not clear that this element of the award was challenged; plaintiff had second and third degree burns to his legs and feet, was hospitalized for 28 days, and “underwent excruciatingly painful debridement and skin grafting procedures resulting in permanent scarring”]; Parks v Hutchins, 162 AD2d 666 [2d Dept 1990], affd 78 NY2d 1049 [1991], 12 NY Jury Verdict *7 Rep issue 19, case 7 [verdict of $5,000,000 for pain and suffering reduced as excessive to $2,000,000; plaintiff, who spent one year in hospital burn unit, sustained first, second and third degree burns to legs, lost four toes, was unable to walk, and suffered psychological injuries*]; Rush v Sears, Roebuck & Co., 92 AD2d 1072, 1073 [3d Dept 1983] [verdict of $4,000,000 reduced as excessive to $1,500,000; plaintiff sustained second and third degree burns over 42% of her body, underwent long hospitalizations for skin grafting, and suffered excruciating pain and permanently disfiguring scars; plaintiffs “mental faculties” were unimpaired].)
Other verdicts in the two million dollar range were upheld. (See, Nelson v New York City Health & Hosps. Corp., 237 AD2d 189 [1st Dept 1997], lv denied 91 NY2d 810 [1998] [verdict of $2,000,000, reduced by 30% for deceased plaintiffs comparative negligence, upheld; plaintiff sustained burns resulting in “conscious suffering” for weeks before death]; Place v Federal Pac. Elec. Co., 241 AD2d 317 [1st Dept 1997], lv denied 90 NY2d 812, 13 NY Jury Verdict Rep issue 46, case 2 [while court reduced award for past and future lost earnings, the past and future pain and suffering awards for $1,500,000 and $745,000,* respectively, were not reduced, although it is not clear that they were challenged; plaintiff electrician suffered third degree bums to his upper body and torso, was confined in the hospital for one month and underwent multiple skin grafts, and had contractures resulting in a 60% loss of range of motion*].)[4]
While considering the awards rendered in other cases, the court must also consider the unique facts of this case. It is undisputed that plaintiff sustained second and third degree bums to at least 17% of her body in the areas of her face, chest, arms, and hands. Plaintiff has made a good cosmetic recovery to her face and hands, but her chest, breasts, and upper arms are severely and permanently scarred. Her back, sides and buttocks — the sites from which skin was taken for grafts — are also severely and permanently scarred. The scarred areas from the burns and the skin grafts together cover virtually all of plaintiffs torso, except her stomach.
Plaintiffs accident occurred in 1989. She was hospitalized after the fire for approximately one month, during which she *8 underwent excruciating debridements and two skin grafting surgeries. In 1993, she underwent a third surgery to relieve the pain, burning and itching associated with very thick scars, known as scar contractures, which had developed across her breast. Notwithstanding the surgery, plaintiff continues to experience these symptoms, and it is undisputed that no further treatment is available to relieve them.
At the time of plaintiff’s injury, she was 25. Although she promptly returned to work, and appears to function well with the strong support of her family, the undisputed evidence was that she continues to suffer from posttraumatic stress disorder and has severe psychological problems that will require, long-term treatment. Plaintiffs testimony — that much more affecting for its restraint — leaves no doubt as to the almost unimaginable pain she endured after the accident, and as to the continuing physical pain and psychological problems she experiences as a result of her injury.
Without minimizing the severity of plaintiffs injuries or the devastating impact they have had on her life, and recognizing that the injuries of different persons are not capable of exact or objective comparison, the court must take note that the jury’s verdict in this case is twice as high as the highest verdict awarded in a bum case in New York. The court is therefore clearly called upon to determine whether the verdict is excessive.
In making this determination, the court is guided by its strong commitment to the principle that jury awards are entitled to considerable deference, and by its firm belief that juries, as the repository of community values, are better placed than the courts to determine what constitutes reasonable compensation for an injury. Any exercise of the court’s discretion to reduce the verdict is also tempered by its concern over the trend, not only in New York but in our legal system nationwide, for the courts to override jury awards, and to erode the jury’s traditional and constitutionally protected role in assessing damages. (See, Glaberson, Juries, Their Powers Under Siege, Find Their Role Is Being Eroded, NY Times, Mar. 2, 2001, at 1, col 1; Annual Verdicts & Settlements Roundup, Song, Many Large Awards in 1996 Short-Lived, NYLJ, Oct. 9, 2001, at S6, col 1.) On the other hand, the court agrees that reviewing courts have the benefit of perspective that a jury lacks, to the extent that the courts have information about awards in other similar cases. Moreover, the courts have an obligation to ensure that similarly situated litigants are treated in a similar fashion.
*9 It is suggested that reviewing courts may balance these competing concerns, and minimize incursions on the jury’s function in evaluating damages, by considering the verdicts of other juries in similar cases, and not merely the courts’ orders approving or disapproving of such verdicts. By focusing on other juries’ verdicts, the courts will both affirm the primacy of the jury’s role in fixing damages, and foster the value of consistency in awards for similarly placed litigants.
In the instant case, however, whether prior verdicts or appellate approvals are considered, they are substantially lower than the jury’s verdict. The disparity between the prior verdicts and the verdict in this case does not by itself require the conclusion that the verdict is excessive. Here, however, plaintiff’s injuries are comparable in severity to the injuries for which certain of the prior verdicts were awarded. Plaintiffs injuries, while terrible, therefore do not warrant the unprecedented level of damages that is reflected in the jury’s award. The court accordingly holds that the verdict deviates materially from reasonable compensation, and that it must be reduced in the interest of fairness and evenhandedness. (See, Consorti v Armstrong World Indus., 72 F3d 1003, supra.)
In determining the amount by which the verdict should be reduced, the court concludes that the lower verdicts cited by defendant do not afford a fair amount of damages for plaintiffs injuries. While the cases involved injuries with superficial factual similarities to plaintiffs injuries, it does not appear from the decisions that the injuries included severe permanent scarring or psychological injuries, and therefore that the injuries were as extensive as plaintiffs. The verdicts in the two to five million dollar range involved extensive injuries with similarities to plaintiffs. However, the injuries are not capable of precise comparison, and the jury in this case expressed its clear intent to award plaintiff substantial damages for injuries which it could, on the evidence, fairly regard as catastrophic. In deference to the jury and considering plaintiffs particular injuries, the court concludes that the verdict should not be limited to the two to five million dollar range, but should be reduced to $8,000,000, with damages for past and future pain and suffering in the amount of $4,000,000 each. Although a verdict in such amount has not previously been approved in a burn case by the appellate courts, the amount is not higher *10 than the highest level of previous burn verdicts.[5] It is the court’s opinion, based on the severity of plaintiffs injuries, that this amount constitutes reasonable compensation.
The court further holds that the verdict for lost wages should be reduced as against the weight of the evidence and without opposition by plaintiff, from $400,000 to $17,000.
Defendant also contends that the verdict should be set aside in the interests of justice and because it is against the weight of the evidence. In support of this branch of the motion, defendant objects to virtually every significant evidentiary ruling made during the course of the trial that was adverse to defendant, and to virtually all of the adverse rulings made at the close of the evidence as to the claims to be put to the jury and the form of the verdict sheet. Defendant does not raise new legal arguments, and does not set forth grounds for reconsideration of the trial rulings, to which the court accordingly adheres. The court further holds that plaintiffs attorney’s statements during the summation were within the bounds of fair comment.
It is hereby ordered as follows: Defendant’s motion to set aside the verdict is granted to the following extent: a new trial on damages only is ordered unless plaintiff stipulates in writing to reduce the verdict for past pain and suffering and future pain and suffering to $4,000,000 each. The verdict for past loss of earnings is reduced without objection to $17,000. The motion is otherwise denied.

. Plaintiff, a lab technician at the time of her accident, claimed that she was preparing materials for a classroom experiment when the substance that she was mixing in a blender ignited, causing the lab coat to catch fire.

. Although this case was decided while the “shock the conscience” standard for judicial review of verdicts was in effect, the rationale for consideration of verdicts in similar cases applies equally to the “deviates materially” standard.

. A diamond after the verdict amount or after the description of the injuries indicates that the reported decision does not provide this information and that the details are from the New York Jury Verdict Reporter.

. The court has also examined the substantially higher verdicts submitted by plaintiff from other jurisdictions, but finds, based on the verdict reports (case citations not having been provided), that the injuries in such cases were apparently considerably more severe than those sustained by plaintiff.

. As noted above, an $8,000,000 verdict was awarded in Whitfield v City of New York (239 AD2d 492, supra). The $10,300,000 verdict of Moskowitz v Massachusetts Inst. of Technology (100 AD2d 810, supra) is not accepted as a basis for damages, as plaintiff acknowledged that her injuries were less severe than those of the Moskowitz plaintiff.