■ MAN-KIT LEI, Respondent, v CITY UNIVERSITY OF NEW YORK, Appellant. [823 NYS2d 129]—

Judgment of the Court of Claims of the State of New York (Alan C. Marin, J.), entered on or about June 14, 2004, which, after a nonjury trial, awarded claimant damages, unanimously modified, on the law, to the extent of vacating the award for future lost wages, and otherwise affirmed, without costs.

Claimant, while a student at one of defendant's colleges, sustained serious burns while sculpting with an oxyacetylene torch in the college's metal lab. The trial court found defendant 80% responsible for plaintiff's harm and, as is here relevant, awarded claimant $2.5 million for past pain and suffering, $2.5

million for future pain and suffering, and $850,920 for future lost wages.

We reject defendant's claim that it satisfied whatever duty it owed claimant by equipping its metal lab with fire extinguishers and leather aprons, and having the lab regularly inspected by the Fire Department. The unrebutted testimony of the claimant's experts, as credited by the trial court (*see Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992]), fairly established that defendant deviated from good and accepted safety practices by allowing claimant, an undergraduate student, to weld with such dangerous equipment alone, without the presence of a fire watcher and without proper protective outerwear. It is undisputed that defendant issued no written guidelines setting forth safety procedures for students to follow when working with dangerous machinery and instead left the matter of safety procedures entirely to the class instructor. While leather aprons were available to the sculpting students, their use while welding was not mandated. Under these circumstances, the liability finding against defendant was sufficiently supported.

With respect to damages, the evidence showed that, as a result of the accident, claimant has endured seven operations and numerous painful treatments, required extensive physical therapy, and sustained permanent significant scarring to his upper torso, neck, lower jaw and left hand, which is gnarled and has diminished grip strength. Claimant's damaged skin itches persistently; heat, cold and humidity make him uncomfortable; and he has developed serious psychological problems, many of them permanent, including elements of post-traumatic stress disorder and severe depression. Under these circumstances, we reject defendant's contention that the damages awarded for past and future pain and suffering deviate materially from what is reasonable compensation (*see Weigl v Quincy Specialties Co.*, 190 Misc 2d 1 [2001], *affd* 1 AD3d 132 [2003]).

Although claimant ultimately completed his education, he was, at the time of trial, earning $25,000 per year working as a security guard. The trial court credited the testimony of claimant's experts that claimant, by reason of disabilities attributable to the accident, would continue to earn at a level not commensurate with his education, and thus was entitled to an award on that basis for future lost wages. We disagree for the reasons set forth below.

Claimant bore the burden of establishing loss of wages with reasonable certainty (*see Tassone v Mid-Valley Oil Co.*, 5 AD3d 931, 932 [2004], *lv denied* 3 NY3d 608 [2004]). Here, claimant's goal prior to the accident was to obtain a position in the art

world with an eye toward operating his own sculpture studio. Toward that objective, claimant returned to the City University of New York (CUNY) after the accident, completed his remaining course work and obtained his degree. Approximately one year after the accident, claimant resumed welding and was comfortable using a welding torch. Notwithstanding a diminished grip in his left hand, claimant believed his welding skills and ability to use the torch had not diminished as a result of the accident. Since his accident, claimant's sculptures have been displayed several times in galleries. Claimant unequivocally testified that his goal remains to be a sculptor, he continues to seek opportunities to exhibit his works, and he was working on a new sculpture at the time of the damages phase of the trial.

With respect to his postaccident employment, in the spring of 2000, claimant worked for the U.S. Census Bureau, going door-to-door and obtaining information from residents. Subsequently, claimant worked for the Chinese American Planning Council earning $26,000 a year. As of June 24, 2002, claimant held a civil service position at Bellevue Hospital earning $25,500.

Claimant presented the testimony of two experts to establish future lost wages. Dr. Richard Schuster, a clinical psychologist and rehabilitation specialist created a vocational profile of claimant and entered it into a database containing the "entire labor base [of] New York." His assessment indicated that claimant matched 57% of the jobs and that the average weekly wage of these was $996.85. Figuring in claimant's psychological ailments, Dr. Schuster ascertained that claimant matched 14.4% of the jobs in New York and that the average weekly wage of these jobs was $919. Upon reassessment in 2001, Dr. Schuster determined that claimant would suffer a 30% reduction in his work life based on his persistent and pervasive psychological problems, and that he was at risk of developing a pattern of low-paying jobs. Claimant's second expert projected claimant's total future economic loss based on the data generated by Dr. Schuster.

We find that claimant did not establish future lost wages with a reasonable degree of certainty. Dr. Schuster's analysis was essentially generic to a person who holds a bachelor's degree. It did not focus on claimant's interests or aptitudes. Moreover, Dr. Schuster never identified any of the occupational titles in the database. Given the complete absence of any interest by claimant in any of these unidentified positions—let alone an actual prospect of obtaining one of them—the award for future wages is speculative and should be vacated (*see Naveja v*

*Hillcrest Gen. Hosp.*, 148 AD2d 429, 430 [1989]; *Marmo v Southside Hosp.*, 143 AD2d 891, 893 [1988]; *cf. Keefe v E & D Specialty Stands*, 272 AD2d 949, 949-950 [2000]). Concur—Tom, J.P., Mazzarelli, Friedman, Catterson and McGuire, JJ.