LUIS SURIA, Respondent-Appellant, v FELIX SHIFFMAN et al., Respondents, and AVTAR S. DHALIWAL, Appellant-Respondent.

First Department, March 19, 1985

**APPEARANCES OF COUNSEL**

*Emilio Nunez* of counsel (*Carolyn E. Demarest* with him on the brief; *Cascione, Chechanover & Purciglioti, P. C.,* attorneys), for respondent-appellant.

*Michael A. Ellenberg* of counsel (*Donna Ferrara* with him on the brief; *LeBoeuf, Lamb, Leiby & MacRae,* attorneys), for appellant-respondent.

*Joseph A. Ascione* of counsel (*Robert H. Chester* with him on the brief; *Fischer, Kagan, Ascione & Zaretsky,* attorneys), for Felix Shiffman, respondent.

## OPINION OF THE COURT

KASSAL, J.

Plaintiff, a transsexual, age 54 at the time of trial, brought this medical malpractice action, asserting causes of action premised upon malpractice and lack of informed consent. According to plaintiff, he visited Dr. Shiffman and Dr. Rish in 1974 and underwent injections of free silicone into his breast. Treatment was rendered initially in June or July of 1974 and again in December of that year. In March 1975, plaintiff noticed that both breasts had become inflamed and sore, whereupon Rish, in Shiffman's absence due to vacation, administered cortisone. Subsequent cortisone treatments were rendered by Shiffman from December 1975 until the summer of 1976, a total of 30 injections, in addition to an incision and drainage to relieve the swelling caused by the infection. He also received treatment at the Sloan-Kettering Memorial Hospital to relieve the infection by application of ointment and hot compresses. While this caused the left breast to empty, the right remained hard, reddish and lumpy. He experienced pain, swelling, discoloration and oozing in both breasts.

In July 1976, Shiffman referred plaintiff to Dr. Dhaliwal, whose opinion was that further cortisone treatment or incisions and drainage would not alleviate the condition. The silicone had solidified and hard nodules, called granulomata, had formed, giving the breasts a hard, nodular, lumpy appearance. As a result, Dhaliwal concluded that a subcutaneous mastectomy was necessary to remove all of the granulomata. The operative procedure was performed on September 14, 1976 by Dhaliwal, with Shiffman in attendance. Significant sections of muscle and tissue were removed. On September 20, 1976, six days after the surgery, while he was still hospitalized, plaintiff examined his wounds and the extensive scarring and disfigurement and, after telephoning the District Attorney's office, left the hospital, against medical advice. After retaining an attorney the following day, he was referred to a general surgeon and was admitted to French Polyclinic Hospital for treatment for the infection.

Plaintiff had alleged malpractice against each of the doctors, claiming impropriety by Shiffman in administering silicone injections and in the subsequent cortisone treatment. Medical malpractice was also ascribed to Dhaliwal, associated with the operation and, in addition, it was alleged that plaintiff had

never been fully informed of the risks associated with the surgery or that massive scarring would result. Plaintiff claimed that he was advised that the operation was to drain the breasts by incision and, afterwards, he would have only a small scar on his chest. This was evidenced by the consent form, which, at the time plaintiff signed it, recorded — "incision of the right breast." Dhaliwal admitted changing the form after it had been executed but before the operation to reflect — "incision and drainage of granular of right breast." Shiffman, who was in attendance during the operation, gave plaintiff his admission slip to the hospital and, it is alleged, also did not advise of the risks associated with the operation.

Defendants disputed the factual account offered by plaintiff. Shiffman, denying that he had given plaintiff any silicone injections, claimed that he first saw plaintiff in December 1975, on a complaint of indurated breasts. At that time, plaintiff had told Shiffman that another transsexual had injected mineral oil into his breasts. He suggested cortisone treatment to relieve the condition and the infection. According to Dhaliwal, who considered a mastectomy necessary to remove granulomatous tissue which could not be drained, there was a danger that, without the operation, the silicone would spread to organs, including the liver and spleen. He stated that he had advised plaintiff of both the risks and benefits of the surgery, including the lack of any alternative treatment and the possibility of significant scarring.

The jury was carefully charged on the applicable law, including the issue relating to any culpable conduct by plaintiff which contributed to the injuries. The court's charge required the jury to consider the legal aspects of both contributory negligence and comparative negligence with respect to plaintiff's conduct before and after September 1, 1975 (the effective date of New York's comparative negligence standard contained in CPLR art 14-A).

By a series of special interrogatories, the jury found that Dr. Shiffman had committed medical malpractice in June through July 1974 and in December 1974 through January 1975, the separate periods having been submitted solely to apportion responsibility on account of a change in Shiffman's insurance carriers. While the jury found no medical malpractice by Dhaliwal, it did conclude that he had not obtained proper informed consent in that he had failed to adequately advise plaintiff of the risks associated with the surgery. The jury also found that plaintiff had been contributorily negligent, attributing fault in the following proportions: 60% to Shiffman, 15% to Dhaliwal and 25% to plaintiff. Subsequently, the trial court directed a

verdict in favor of Shiffman, based upon the jury's finding that plaintiff had been contributorily negligent and entered judgment awarding plaintiff $1,500,000 (the verdict of $2,000,000 reduced by 25% for plaintiff's culpable conduct), which would be payable solely by Dhaliwal. The court denied Dhaliwal's motion to reduce the judgment by 60% attributable to Shiffman's negligence, thereby rejecting Dhaliwal's claim that he was a successive, not a joint or concurrent tort-feasor, and was responsible only to the extent that the surgery aggravated the injuries.

Both Dhaliwal and plaintiff have appealed, objecting to the direction of a verdict in favor of Shiffman. Dhaliwal also claims that the verdict against him based upon lack of informed consent was against the weight of the evidence and that, in any event, he was a successive tort-feasor and should not be held responsible for the entire damage award, which both Dhaliwal and Shiffman claim was excessive. The parties do not challenge the trial court's dismissal of the complaint as against Rish.

The record supports the findings of malpractice and lack of informed consent against defendants Shiffman and Dhaliwal, respectively, and, accordingly, it was error to direct a verdict in favor of Shiffman. In large part, the liability of both defendants turned on issues of credibility, with the jury called upon to resolve the conflict in the proof as to the issues of malpractice and lack of informed consent. While Dhaliwal relies upon the fact that it was necessary to perform the operation and his own testimony that plaintiff had told him he wanted to be well and the silicone removed, there was a factual issue here of whether a reasonably prudent person would have undergone the surgery if fully apprised of the risks associated therewith (Public Health Law § 2805-d; *Lipsius v White,* 91 AD2d 271, 280-281; *Zimmerman v New York City Health & Hosps. Corp.,* 91 AD2d 290). Determination of this issue and the related question of the extent to which plaintiff was informed of the risks of the surgery were peculiarly within the province of the jury. In finding in favor of plaintiff, the trier of the facts obviously concluded that plaintiff was not so informed. The conclusion is supported by the weight of the credible evidence, including the operative consent form executed by plaintiff and the testimony relating to plaintiff's reaction six days after the surgery had been performed, when he left the hospital. As was observed in *Lipsius v White* (91 AD2d, at p 280): "The duty to disclose risk is based upon a patient's right to determine what shall be done with his body (*Schloendorff v Society of N. Y. Hosp.,* 211 NY 125; see *Burton v Brooklyn Doctors Hosp.,* 88 AD2d 217, 225-226). It is the physician's obligation to furnish a reasonable explanation of the

available choices and potential dangers, the test of such reasonableness being for the jury to determine (*Zeleznik v Jewish Chronic Disease Hosp.,* 47 AD2d 199, 205)."

The record also supports the jury's finding that there had been malpractice by Shiffman in the administration of silicone injections in 1974 and thereafter. While the jury did conclude that there was culpable conduct on the part of plaintiff, attributing 25% fault thereto, under the circumstances of this case, that conclusion did not warrant the direction of a verdict in favor of Shiffman. Shiffman contends on the appeal that plaintiff was negligent in (1) submitting to the administration of silicone injections, (2) permitting mineral oil to be injected into his chest and (3) leaving the hospital after the surgery had been performed, contrary to medical advice. However, plaintiff's participation in the silicone treatment program would not afford a defense to the action for malpractice. Plainly, assumption of the risk here is no defense. Moreover, the claim that the injury resulted from the injection of mineral oil, not silicone, was offered by Shiffman to explain the cause of plaintiff's condition, not as a defense, and was rejected by the jury, who found that the injuries resulted from the silicone injections. To the extent that the jury did find that plaintiff was negligent in leaving the hospital, this occurred in September 1976 and, therefore, was subject to the comparative negligence standard under CPLR article 14-A. In any event, even under the former contributory negligence rule, such postsurgical actions by a patient would not afford a complete defense in a malpractice case, but would only warrant a reduction in the damages to the degree that the plaintiff's negligence increased the extent of the injury (*see, Morse v Rapkin,* 24 AD2d 24, 25; *Quinones v Public Administrator of County of Kings,* 49 AD2d 889, 890).

Having determined to reinstate the verdict against Shiffman, we need not reach the issue of whether Dhaliwal was a successive, joint or concurrent tort-feasor. Shiffman, as the original tort-feasor, is fully responsible for the entire injury sustained (*Wiseman v 374 Realty Corp.,* 54 AD2d 119; cf. *Zillman v Meadowbrook Hosp. Co.,* 45 AD2d 267; *Dubicki v Maresco,* 64 AD2d 645). Such result is warranted on this record, particularly considering that Shiffman, as plaintiff's treating doctor, was in attendance during the operation and was also charged with failing to fully inform plaintiff of the risks associated with the surgery. Although that precise issue was not separately submitted to the jury, the parties acquiesced in that submission and we will not interfere with that determination (*see, Stevenson v*

*News Syndicate Co.,* 302 NY 81, 87; *Leopold v Britt,* 58 AD2d 856, 857). Nor did the parties seek to limit the respective injuries which resulted from the separate acts by the two doctors and, on this record, taking into account the extent of the scarring and disfigurement which resulted, we do not perceive any basis to do so here.

However, we do find the verdict excessive and, in directing a reduction, have taken into account the nature and extent of the injuries, the degree to which they are pertinent, and the pain, past, present and future. (*Riddle v Memorial Hosp.,* 43 AD2d 750, 751.) At the time of the events, plaintiff was an unlicensed school teacher, who had not worked steadily since 1961, holding sporadic employment as a commercial artist. Although unquestionably there was extensive scarring and a permanent deformity, accompanied by severe pain, in our view, the $2,000,000 verdict is excessive and should be reduced to the extent directed (*cf. Chlystun v Frenmer Transp. Corp.,* 74 AD2d 862). Plaintiff shall have 30 days to stipulate to the reduction, in the absence of which, the action shall proceed to a new trial on damages only as against defendants Shiffman and Dhaliwal, with the apportionment of their respective liability heretofore made to be binding at that trial.

Accordingly, the judgment, Supreme Court, New York County (Harold Hughes, J.), entered November 28, 1983, awarding plaintiff $1,500,000 damages against defendant Dr. Dhaliwal and dismissing the complaint against defendants Dr. Shiffman and Dr. Rish, on a jury verdict in favor of plaintiff for $2,000,000, which attributed 25% fault to plaintiff, 60% to defendant Shiffman and 15% to defendant Dhaliwal, should be modified, on the law and on the facts, without costs or disbursements, to reinstate the verdict against Shiffman, deny his motion for a directed verdict and order a new trial on damages only unless, within 30 days, plaintiff stipulates to a reduction in the verdict to $800,000, in which event, a judgment, as so modified, shall be entered in favor of plaintiff and against defendants Shiffman and Dhaliwal in accordance with the jury's findings as to the relative responsibility and fault of the respective parties, and otherwise affirmed, without costs.

Kupferman, J. P., Ross and Carro, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 28, 1983, unanimously modified, on the law and on the facts, without costs and without disbursements, to reinstate the verdict against Shiffman, deny his motion for a directed verdict and order a new trial on damages only unless, within 30

days of the date of this court's order, plaintiff stipulates to a reduction in the verdict to $800,000, in which event, a judgment, as so modified, shall be entered in favor of plaintiff and against defendants Shiffman and Dhaliwal in accordance with the jury's findings as to the relative responsibility and fault of the respective parties, and otherwise affirmed, without costs and without disbursements.