■ Debera C. Sutch, Individually and as Administrator of the Estate of Alfred W. Sutch, Jr., Respondent, v Steven Yarinsky, Appellant. [739 NYS2d 214] —Carpinello, J. Appeal from an order of the Supreme Court (Nolan, Jr., J.), entered December 22, 2000 in Saratoga County, which, inter alia, partially denied defendant's motion to set aside a verdict in favor of plaintiff.

A jury determined that defendant, a plastic surgeon who performed a bilateral breast reduction on plaintiff, committed malpractice in the course of this treatment and also awarded her damages. The sole issue on appeal concerns two aspects of the jury's damage award, namely, whether the awards of $300,000 for past pain and suffering and $500,000 for future pain and suffering are excessive and materially deviate from reasonable compensation (*see*, CPLR 5501 [c]).[1] Supreme Court, having the distinct advantage of presiding over the trial and observing the testimony and demeanor of the parties and their respective expert witnesses, concluded that the trial evidence and comparable medical malpractice cases supported the awards. We now turn to that evidence.

The record reveals that plaintiff underwent bilateral breast reduction surgery on March 9, 1995, at the age of 26, to eliminate various physical ailments associated with the large size of her breasts. Suffice it to say, plaintiff developed complications in her left breast immediately following surgery. The condition of this breast became progressively worse in the ensuing weeks and ultimately led to the loss of her entire left nipple areola complex, leaving in its place a large scar. Photographs of this grievous transformation of plaintiff's breast are contained in the record. Plaintiff's current treating physician opined that any reconstruction of the left nipple areola complex would require two additional surgeries. To be sure, these procedures could not actually replace her left nipple; rather, they would

---

1. Defendant does not take issue with the $100,000 derivative award granted to plaintiff's husband, who was killed in an accident following the commencement of this action. Moreover, neither party takes issue with the reduced future medical expenses award of $15,000.

serve only to improve the appearance of the left breast, apparently by constructing a nipple and tattooing color onto it.

Contrary to defendant's contentions, plaintiff presented compelling evidence concerning the short and long-term physical and emotional consequences of his malpractice (cf., *Gunder v Murthy*, 185 AD2d 915, 916 [evidence of injured plaintiff's future pain and suffering following botched vasectomy "far from compelling"]). Plaintiff described the physical trauma associated with the loss of her left nipple areola complex, testifying how it ultimately turned into "a very dark brown scab" and separated from the rest of her breast. She described how her breast "oozed" a thick, yellow drainage which had a significant unpleasant odor. In her own words, she "smelled like rotting, decaying meat." She further described the various debriding procedures performed to remove the dead tissue from her breast, the cauterization of the area with silvadene, a procedure she testified smelled like "burning flesh," and the resulting two-inch hole in her breast. Indeed, according to a clinical psychologist who has treated plaintiff, she experienced "major emotional shock" and "acute anxiety" when the condition of her left breast was first revealed to her in late March 1995.

Plaintiff's evidence further established that she is no longer the happy and confident person she was prior to surgery. According to plaintiff, in addition to losing her confidence as a result of the condition of her breast, she lost her once "wonderful" and "loving" sexual relationship with her husband. Before his untimely death on March 30, 2000, she refused to disrobe in front of him and never fully disrobed during their sexual relations. Plaintiff also described how she feels "horrible" every day when she looks at herself in the mirror and how she has altered the way she dresses in an attempt to mask her breasts. She also detailed her fear of rejection, particularly by men, and specifically testified that she does not believe that she will ever be able to have a relationship with another man again. She described that she no longer feels like a "whole woman," but instead feels like "Frankenstein."

Plaintiff's clinical psychologist confirmed that, as a result of her surgery and disfigurement, plaintiff now has very strong feelings of anxiety and depression. According to this expert, her disfigurement and the resulting emotional responses clearly affected her sexual relationship with her husband while he was alive. Moreover, same has had a tremendous and powerful negative impact on her fear of rejection and sense of

identity.[2] He specifically confirmed that plaintiff has a fear of rejection by men which will keep her away from potentially satisfying interpersonal relationships in the future. This latter factor, we note, takes on particular relevance given the untimely death of plaintiff's husband. Indeed, according to this psychologist, even if some repair to her left breast is made at a physical level, the psychological damage is nevertheless "bound to be permanent to some degree."

Given this evidence, in conjunction with our evaluation of relatively comparable medical malpractice cases, particularly *Baez v Dombroff* (142 AD2d 705 [$750,000 awarded in medical malpractice action to recover damages for physical and physiological injuries from a breast reduction operation]; *see also, Lopez v Bautista*, 287 AD2d 601; *Motichka v Cody*, 279 AD2d 310, *lv denied* 97 NY2d 609; *King v Jordan*, 265 AD2d 619; *Donohoe v Goldner*, 168 AD2d 412; *Suria v Shiffman*, 107 AD2d 309, *mod* 67 NY2d 87), we agree with Supreme Court's conclusion that the damage awards are neither excessive nor do they materially deviate from reasonable compensation. Accordingly, we affirm.

Mercure, J.P., Crew III, Spain and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.

---

**2.** This expert elaborated on why the trauma experienced by plaintiff is much more significant than, for example, a scar on one's hand or arm. In his words, "[t]his has to do with her sexual identity, her identity as a woman, so there's a clear, deep powerful meaning that goes right to the root of who she is because of the scars and disfigurement."