■ LYDIA WILLIAMS, Appellant-Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Respondents-Appellants, et al., Defendants. [911 NYS2d 612]—

Order, Supreme Court, Bronx County (Cynthia S. Kern, J.), entered March 3, 2009, which denied defendants' posttrial motion insofar as it sought to set aside the jury's verdict as to liability, granted the motion insofar as it sought to set aside the jury's award of $6.5 million as excessive, and directed a new trial as to damages unless plaintiff stipulated to a reduced award of $1 million, affirmed, without costs.

Viewed in the light most favorable to plaintiff, the prevailing party, the evidence sufficiently supports the jury's findings that defendant physician deviated from good and acceptable medical standards by performing an unnecessary modified radical mastectomy on plaintiff and by failing to inform her that a lumpectomy was a viable alternative treatment, and that a reasonably prudent person in plaintiff's position would not have undergone a mastectomy had she been informed of her condition and of less invasive, medically sound alternative treatments (*see Motichka v Cody*, 279 AD2d 310, 310-311 [2001], *lv denied* 97 NY2d 609 [2002]). In light of appellate precedents upholding damage awards in cases where an unnecessary mastectomy was performed when a lumpectomy was a viable alternative treatment (*see Donlon v City of New York*, 284 AD2d 13, 18 [2001]), the trial court properly directed a new trial on the issue of damages unless plaintiff stipulated to reduce the jury awards of $3 million and $3.5 million for past and future pain and suffering, respectively, to $600,000 and $400,000, respectively (*see Motichka*, 279 AD2d at 311, citing *King v Jordan*, 265 AD2d 619 [1999]; *Lopez v Bautista*, 287 AD2d 601 [2001]). The dissent's suggestion that plaintiff must have suffered extreme emotional distress is not supported by the record. Concur—Andrias, J.P., Freedman and Abdus-Salaam, JJ.

Saxe and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: I must respectfully dissent because I believe the motion court improvidently exercised its discretion in directing the plaintiff, Ms. Lydia Williams, to stipulate to a drastically reduced award. Following a jury verdict in her favor for $6.5 million, the motion court directed a new trial as to damages unless Ms. Williams, a 32-year-old single female, stipulated to a reduced award of $1 million for past and future pain and suffering arising out of a mastectomy performed when she was, in fact, cancer-free. I agree with Ms. Williams that in reducing the jury verdict, the court undervalued the profound emotional and psychological damage arising from the loss of a healthy breast and the resultant severe disfigurement of her upper and lower torso, photographs of which are included in the record.

The following facts were established at trial: Ms. Williams was diagnosed with breast cancer in January 2000. On November 6, 2000, following chemotherapy, the plaintiff no longer had a palpable mass according to mammogram films. At that time, defendant Dr. Karen L. Hiotis told the plaintiff that a mastectomy was the only way to tell whether any cancerous cells remained.

On November 22, 2000, after signing informed consent forms, Ms. Williams underwent a modified radical mastectomy and axillary dissection performed by Hiotis at Bellevue Hospital. Hiotis removed 28 lymph nodes from Ms. Williams' left breast. Hiotis commenced reconstructive surgery immediately thereafter. Subsequent pathological testing confirmed that all of the removed breast tissue and lymph nodes were cancer-free.

On October 3, 2008, the jury returned a verdict in Ms. Williams' favor, finding that: Dr. Hiotis had departed from good and acceptable medical standards; the departure was a substantial factor in causing the plaintiff to undergo an unnecessary mastectomy; Dr. Hiotis had failed to provide Ms. Williams with sufficient information in order to obtain informed consent for the surgery; a reasonable person in Ms. Williams' position, if adequately informed, would not have consented to the mastectomy; and the mastectomy and reconstructive surgery had injured Ms. Williams.

The jury ascribed 100% of the fault to the defendants Dr. Hiotis and New York City Health and Hospitals Corp., which owns and operates Bellevue Hospital. The jury awarded Lydia Williams $3 million for past pain and suffering and $3.5 million for future pain and suffering extending over 41.9 years.

The defendants moved pursuant to CPLR 4404 (a) to set aside

the verdict, or in the alternative, to set aside the jury award as excessive pursuant to CPLR 5501 (c). The trial court granted the defendants' motion to the extent that it sought to vacate the damages award as excessive unless the plaintiff stipulated to a reduced award of $1 million ($600,000 for past pain and suffering and $400,000 for future pain and suffering).

The trial court based its determination on a comparison of awards in what the court considered similar cases reviewed by the Appellate Division. It relied solely on *Motichka v Cody* (279 AD2d 310 [1st Dept 2001], *lv denied* 97 NY2d 609 [2002]) and *King v Jordan* (265 AD2d 619 [3d Dept 1999]). The awards affirmed for unnecessary mastectomies in those two cases were $850,000 and $925,000, respectively. In this case, the motion court determined that $1 million is "appropriate" because the latter two cases were decided "eight to ten years ago."

On appeal, the plaintiff asserts that *Motichka* and *King* are not analogous in that the unnecessary mastectomies involved cancerous breasts rather than a healthy one as in the instant case, and that the facts and circumstances of those cases are not congruent with the facts of this case. I agree, and for the reasons set forth below, I believe the motion court erred.

It is well established that the Appellate Division shall determine that an award is excessive or inadequate if it deviates materially from what would be "reasonable compensation." (CPLR 5501 [c].) Compensation has been deemed reasonable when it falls within boundaries of other awards that have been previously approved on appellate review. (*Donlon v City of New York*, 284 AD2d 13, 18 [1st Dept 2001].) In *Donlon*, this Court held that an "analysis of appealed verdicts using CPLR 5501 (c) is not optional but a legislative mandate." (284 AD2d at 16.) Moreover, "[c]ase comparison cannot be expected to depend upon perfect factual identity. More often, analogous cases will be useful as benchmarks." (*Id.*)

However, this Court has also held that not all awards lend themselves to review and approval by comparison with previously approved verdicts. (*See Launders v Steinberg*, 39 AD3d 57 [1st Dept 2007], *mod on other grounds* 9 NY3d 930 [2007]; *see also Morsette v The Final Call*, 309 AD2d 249, 256 [1st Dept 2003], *lv dismissed* 5 NY3d 756 [2005] [personal injury awards, especially those for pain and suffering, are subjective in nature, formulated without the availability of precise mathematical quantification]; *Senko v Fonda*, 53 AD2d 638, 639 [2d Dept 1976] [determining an award of monetary damages is an inherently imprecise and difficult undertaking because each case presents a unique set of facts, and, even in cases with similar injuries, other courts' awards have limited precedential value].)

As a threshold matter, it can be stated that this is not a case "without precedential analog" (*see Launders*, 39 AD3d at 59) and the motion court correctly found the jury's award of $6.5 million excessive. First, the plaintiff herself assessed her injuries at $4 million. Second, a cursory glance at jury verdicts that have not been reviewed or reduced by appellate courts shows that even such awards have generally remained below a $3 million dollar limit in wrongful mastectomy cases.[1]

That said, in my opinion, the motion court reduced the award too drastically because it failed to consider the unique import of breast disfigurement for a *young, single* woman. Reliance solely on *Motichka* and *King* was error not least of all because the factual descriptions in those cases are so meager that there is no basis for viewing them as analogous to the instant case.

The *Motichka* plaintiff was 45 at the time of trial so was about 13 years older than Ms. Williams, but nothing is known about her marital status; the *King* plaintiff was married at the time of the mastectomy whereas Ms. Williams is single. There are no specifics of the *King* plaintiff's physical injuries, and no details about the "ugly scar" (265 AD2d at 621) referenced in her testimony so it cannot fairly be compared to the horrific and extensive scarring and disfigurement of Lydia Williams' breast and abdomen.

There is no mention of the *King* plaintiff suffering lymphedema, as Ms. Williams does, and which defendant Hiotis testified can be a chronic painful and permanent condition resulting from lymph node excision. Moreover *King* does not provide any information about the plaintiff's age or the number of years the jury allocated for future pain and suffering. The court simply affirmed a jury verdict of $925,000 ($500,000 for past pain and suffering; $300,000 for future pain and suffering and $125,000 for plaintiff's husband for loss of services).

Moreover, as the plaintiff correctly asserts, all that is established in cases in which a damage award is simply upheld by an appellate court is that the jury's award was not excessive; it does not mean that a higher award would not have been up-

---

1. In *Russano v Schulman*, the plaintiff commenced a malpractice suit to recover for personal injuries associated with the removal of 13 lymph nodes that caused lymphedema. (2001 NY Slip Op 40555[U] [Sup Ct, NY County 2001].) The jury awarded the plaintiff $2.15 million. In *Byron v Gaston*, a 72-year-old plaintiff needed only a lumpectomy, but was given a mastectomy because the physician misread the mammography results. The jury awarded $1.75 million. (2005 WL 2030400 [Sup Ct, Bronx County 2005].) In *McCord v Berman*, as a result of the physician's negligence, the plaintiff's breasts were severely disfigured. (2010 WL 1347245 [Sup Ct, Richmond County 2010].) The jury awarded $3.5 million. (*Id.*)

held. Indeed, the *King* Court specifically highlighted the deference due to a jury, and noted that its own discretionary power to overturn a jury verdict should be exercised sparingly. (*King*, 265 AD2d at 621.)

This Court's ruling in *Motichka* followed 15 months later in 2001, with a finding that the jury award of $2.25 million ($780,000 for past pain and suffering, $1.47 million for future pain and suffering) deviated materially from reasonable compensation under the circumstances. Relying solely on *King*, it further found that the motion court's reduction of the award to $850,000 was proper. (*Motichka*, 279 AD2d at 311.) While the plaintiff's examination of the jury verdict report shows that the *Motichka* plaintiff did not undergo reconstructive surgery, or suffer abdominal scarring or lymphedema, there was no analysis whatsoever in the decision itself. This Court made no comparisons to the *King* plaintiff, so nothing can be gleaned from the decision as to any similarities in the facts and circumstances of the two cases. It is also unclear whether the pain and suffering award was for past or future suffering, or a combination of the two. This Court simply affirmed the reduction because it mirrored the amount awarded to the *King* plaintiff.

The absence of critical information notwithstanding, *Motichka* and *King* have been used as precedential authority by appellate courts reviewing jury awards in medical malpractice actions where the malpractice has resulted in injuries and disfigurement of plaintiff's breasts. (*See Gonzalez v Jamaica Hosp.*, 25 AD3d 652 [2d Dept 2006] [court affirmed jury verdict of $850,000 for unnecessary mastectomy]; *Sutch v Yarinsky*, 292 AD2d 715 [3d Dept 2002] [appellate court affirmed jury verdict of $300,000 and $500,000 for past and future pain and suffering respectively where left breast was scarred, and nipple was lost in breast reduction surgery]; *see also Lopez v Bautista*, 287 AD2d 601 [2d Dept 2001] [court affirmed a jury verdict of $1 million where cancer not diagnosed for 20 months after initial consultation to point where plaintiff needed radical mastectomy].)

Significantly, the female plaintiffs in these cases were married at the time they became disfigured; and two, at least, were in their mid-40s, and therefore older than the plaintiff in the instant case. These are critical distinctions. (*See e.g. Waldron v Wild*, 96 AD2d 190, 194 [4th Dept 1983] [facial scarring to be evaluated taking into account age, sex, and occupation of victim].)

Moreover, I would reject the defendants' argument that there is no proof of future pain and suffering in the instant case

because the plaintiff did not testify extensively about her emotional distress. Interestingly, they reproduce the following excerpt from the decision of the *King* Court as an example of the type of "compelling testimony" they sought: "Plaintiff's evidence established that she had a difficult physical recovery enduring weeks of pain followed by continuing emotional distress. She testified that the surgery left her with an ugly scar which makes her feel very self-conscious. She related the difficulties with wearing a prosthesis and the manner of her dress. According to plaintiff, she no longer sunbathes nor does she enjoy clothes shopping. She testified that she avoids many normal things married couples do like going out to restaurants. Plaintiff no longer dresses in front of her husband. She described feeling 'less than a woman' and testified that the mastectomy has hampered intimate relations with her husband." (*King*, 265 AD2d at 621.)

The defendants appear to believe that because the plaintiff in this case was not able to articulate a similar experience of shame, embarrassment and humiliation, she therefore does not suffer such emotional distress. The defendants appear not to have heard the oft-quoted phrase "a picture is worth a thousand words."

Moreover, the majority's view that the plaintiff's extreme emotional distress is not supported by the record clearly indicates that the majority has not viewed the photos in the record. Given the postoperative photos of the plaintiff, I believe any testimony by the plaintiff as to distress, for example, over not being able to wear a bathing suit; or of her fears of never finding someone to love or desire her would be simply superfluous, if not overkill.

Indeed, the defendants' reproduction of that excerpt simply serves to highlight the certain emotional and psychological damages suffered by the plaintiff in the instant case. The *King* plaintiff, at least, continued to engage in intimate relations with her husband. In this case, it is likely that the plaintiff does not enjoy even "hampered" intimate relations because she does not yet have a husband. In *King*, the plaintiff testified to avoiding "many normal things married couples do"; how much more likely is it that the plaintiff in this case, will avoid almost all "normal things" that young singles do. In my view, if going out to restaurants with a husband was stressful for the *King* plaintiff, walking alone or even with friends into a bar or a club or any locale full of strangers will be that much more stressful for Lydia Williams. The *King* plaintiff's husband was aware that his wife was undergoing a mastectomy, and was probably

made aware of the possible injuries arising from surgery; the plaintiff in the instant case will have a horrendous obstacle to overcome in explaining to anyone with whom she wants an intimate relationship that she has suffered significant disfigurement that is not initially visible; and should the relationship progress after such revelations, then she will still endure anxiety and doubt about progressing to the most intimate level in the relationship.

The plaintiff in *Sutch* (292 AD2d 715 [2002]) expressed some of these fears after breast reduction surgery left her with a two-inch hole in one breast, and like the plaintiff in the instant case, without a nipple and areola.[2] The Court noted that she "detailed her fear of rejection, particularly by men, and specifically testified that she does not believe that she will ever be able to have a relationship with another man again. She described that she no longer feels like a 'whole woman,' but instead feels like 'Frankenstein.' " (*Sutch*, 292 AD2d at 716.)

It is also worth noting that the Court, which affirmed a jury verdict that awarded the plaintiff more for future pain and suffering ($500,000) than for past ($300,000), considered the testimony of the *Sutch* plaintiff's clinical psychologist, and observed that "[a]ccording to this expert, her disfigurement . . . has had a tremendous and powerful negative impact on her fear of rejection and sense of identity. He specifically confirmed that plaintiff has a fear of rejection by men which will keep her away from potentially satisfying interpersonal relationships in the future." (*Id.* at 716-717.)

Moreover, in a footnote, the Court noted that, "[t]his expert elaborated on why the trauma experienced by [the] plaintiff is much more significant than, for example, a scar on one's hand or arm. In his words, '[t]his has to do with her sexual identity, her identity as a woman, so there's a clear, deep powerful meaning that goes right to the root of who she is because of the scars and disfigurement.' " (29 AD2d at 717 n 2.)

In my view, the psychologist's analysis is grounded in a universal truth. As the plaintiff in the instant case asserts on appeal, "[t]here is a noteworthy cultural significance of the breast to women in our society . . . . It is iconic, a symbol of many things, including femininity, sexuality, and womanhood."

Finally, in relying on *Motichka* and *King* to reduce the plaintiff's award, the motion court ignored an obvious and significant distinction. In both cases, it was determined that the

---

2. While the plaintiff in *Sutch* was married at the time of her surgery, by the time of trial her husband had died leaving her as a 31-year-old widow.

defendants had incorrectly assessed the extent of the malignancy, and hence could have used a less invasive procedure like a lumpectomy. However, there was no dispute that both plaintiffs had breast cancer. This is in stark contrast to this case in which the plaintiff was cancer-free after chemotherapy. In *Motichka* and *King* the injuries were of degree; the plaintiffs could have suffered less disfigurement, less pain. In this case, the plaintiff need not have suffered any disfigurement or pain at all. In my opinion therefore, the jury verdict in this case should not be reduced below $2.5 million of which $1.5 million should be awarded for future pain and suffering.